## AMASA SEAVER *vs.* BOSTON AND MAINE RAILROAD.

A carpenter employed by the day by a railroad corporation to work on the line of their road, and carried on their cars to the place of such work without paying fare, cannot maintain an action against the corporation for injuries occasioned to him while being so carried, by the negligence of the engineer employed by them to manage and run a locomotive engine; or by a hidden defect in an axle, the failure to discover which, if discoverable, was occasioned by the negligence of servants of the corporation whose duty it was to examine and keep in repair the cars, engines and axles.

A railroad corporation, exercising reasonable care in providing and using suitable locomotive engines and tenders on their roads, are not liable for an injury occasioned by a defect

therein to a workman employed by them, while being carried over their road without paying fare.

On the trial of an action against a railroad corporation by a passenger for a personal injury, after several experts called by the plaintiff had testified, upon a statement of the facts and circumstances of the accident, what in their opinion threw the cars from the track, the defendants were permitted to ask a machinist who had been connected for many years with railroads and with the running of cars and engines upon them, and who was in the cars at the time of the accident, and saw all these facts and circumstances, " What in your judgment threw off the car at the time of the accident? " *Held,* that the plaintiff had no ground of exception.

ACTION OF TORT for an injury sustained while travelling in the cars of the defendants from Lawrence to Malden. Trial in Essex at April term 1859, before *Bigelow*, J., who reserved the case, after a verdict for the defendants, for the determination of the whole court upon the following report :

" It appeared that the plaintiff was employed by the defendants to work as a carpenter in repairing fences along the line of the road, in repairing bridges, making switch frames and other similar work; that he commenced to work on May 23d 1856, at the rate of one dollar and fifty cents per day ; that he lived in Lawrence, and that at the time he agreed to work for the defendants at the above rate, he asked the agent who employed him if he could be permitted to ride to his place of work without paying fare, and was told that he could, and that none of the workmen employed by the defendants paid fare ; that he worked for the defendants from May 23d till September 11th 1856, when the accident happened by which he was injured, during which time he was paid his wages monthly at the rate aforesaid, and rode daily to and from his place of work without paying fare; and that he was so riding at the time he sustained the injury for which he sought compensation in this action. Upon these facts I was of opinion and ruled that the plaintiff could not recover for injuries sustained by him, occasioned by the negligence or carelessness solely of another servant of the defendants, employed as engineer to manage and run their locomotives.

" The plaintiff then offered evidence tending to show that on the morning of September 11th 1856 he left Lawrence at half past six in the morning train to go to his work ; and that about

a mile and a half from the town of Reading, an axle of the ten-der broke, by reason of which the baggage car in which the plaintiff was riding was thrown off the track, and he was thereby injured. It appeared by the plaintiff's evidence that the axle broke about from one eighth to one fourth of an inch inside of the outer surface of the inner part of the wheel; that, by the appearance of the iron where the fracture took place, it had been cracked through about one quarter of its thickness before it broke off at the time of the accident; but it did not appear for how great a length of time before the accident such crack existed—the witnesses stating that it might have existed for a few hours or a longer time. It also appeared by the plaintiff's evidence that said axle was originally properly made, that no defect would be apparent in it, and that none could be discov-ered by any tests, known to experts, which could be applied to it; and that, on a careful examination, a crack like the one in question could not be discovered at the time of the accident, it being out of sight and within the outer surface of the wheel; and if it could have been discovered, the omission to find it was occasioned by the negligence and carelessness of the servants of the corporation, whose duty it was to examine the cars, engines, axles and running apparatus of the road, to see that they were safe and in good order, and to keep them in proper repair. I ruled on this evidence that the plaintiff could not recover if the accident which occasioned the injury to his person was caused solely by the breaking of said axle.

" The plaintiff then contended that the tender was unsafe, and defectively constructed, because it had no ' safety beams ' at-tached thereto, and that it was a want of due and reasonable care on the part of the defendants to use a tender on a passen-ger train without having a safety beam connected therewith. Much evidence was introduced on both sides as to the construc-tion, operation and use of safety beams, the length of time which had elapsed since they were first used, and the extent to which they had come into general use on other railroads; and the plaintiff also offered evidence tending to prove that a safety beam on the tender at the time of the accident would have

operated to prevent the axle, after it was broken, from falling down on the track, and thereby throwing off the cars. It appeared in evidence that the defendants employed a person whose duty it was to take charge of the motive power on the road, and see that the same was safe and in proper repair, that suitable appliances were used to render them safe, and that the engines and tenders were fit and suitable for use ; and it did not appear that the president or directors of thé corporation had any care, charge or direction of the purchase of engines and tenders for the use of the road, or in applying thereto any special invention or contrivance to render them safe or less liable to accident.

" For the purposes of the trial I ruled and instructed the jury, that the corporation, in conveying the plaintiff in their cars, acting through their agent, whose duty it was to provide and keep in use safe and suitable engines and tenders on the road, were bound to use due and reasonable care in providing and using on the road engines and tenders suitably constructed with all the appliances and safeguards necessary to render them safe ; and if the omission to provide a safety beam to the tender at the time of the accident constituted a want of due and reasonable care, which rendered the tender unsafe, and such omission was the efficient cause of the accident and of the injury to the plaintiff, he might maintain this action.

" It appeared in evidence that the tender and engine after the accident remained on the track, and that the baggage car and passenger cars were thrown off; the long arm of the axle, with the wheel attached, had penetrated the bottom of the tank of the tender, in which it was transfixed, and the short arm of the axle, with the wheel attached, was found about two hundred feet in the rear of the place where the cars stopped, a few feet from the outer rail of the track. The defendants contended that the cars were thrown off by the wheel with the short arm of the axle passing under the cars, and not by the long arm of the axle, as claimed by the plaintiff, and that therefore a safety beam would not have operated to prevent the accident.

" The plaintiff introduced several witnesses as experts, and, stating to them the various facts and circumstances proved as

existing at the time of the accident, such as the position of the broken arms of the axle, the appearance of the track, the position of the cars, &c., &c., asked what in their opinion threw the cars off the track. In reply to this evidence the defendants called a witness, who was in the cars at the time of the accident and saw all the appearances and noticed all the facts and circumstances connected therewith, the position of the axles and wheels, the condition of the track, &c., &c. This witness was a machinist, and had been connected many years with railroads and with the operation and running of cars and engines on them. No question was made as to his being sufficiently expert to testify. The defendants put to him this question : ' What in your judgment threw off the baggage car at the time of the accident ? ' This question was objected to by the plaintiff; but I permitted it to be put to the witness."

*N. W. Harmon & J. W. Perry,* for the plaintiff. 1. A carpenter, making the agreement with the corporation stated in the first part of the judge's report, had a right to expect all that diligence, foresight, prudence and skill, both in the corporation and its servants, which any other traveller upon a passenger train could expect. *Gillenwater* v. *Madison & Indianapolis Railroad,* 5 Ind. 339. Redfield on Railways, § 170 & notes. The doctrine of *Farwell* v. *Boston & Worcester Railroad,* 4 Met. 49, and *Gillshannon* v. *Stony Brook Railroad,* 10 Cush. 228, is not to be extended beyond those cases.

2. This action may be maintained for the negligence, want of skill or misfeasance of the corporation, in furnishing improper and unsafe machinery for their servants to use — whether they manufactured it by other servants, or purchased it by their agents from strangers. *Keegan* v. *Western Railroad,* 4 Selden, 175. *Hegeman* v. *Western Railroad,* 3 Kernan, 1. *Noyes* v. *Smith,* 28 Verm. 59. *Farwell* v. *Boston & Worcester Railroad,* 4 Met. 62.

3. If this action may be maintained for an original misconstruction and want of safeguards upon the defendants' machinery, there is no distinction in the degree of diligence and skill required of them towards passengers and towards their

own servants who are employed upon the passenger trains; and the jury should have been instructed that the defendants were bound to use every precaution, "as far as human foresight and prudence can go," to transport safely all those who are rightfully upon the passenger train. *Stokes* v. *Saltonstall*, 13 Pet. 190. *Philadelphia & Reading Railroad* v. *Derby*, 14 How. 468. *Steamboat New World* v. *King*, 16 How. 469. *Hegeman* v. *Western Railroad*, 3 Kernan, 1. *Ingalls* v. *Bills*, 9 Met. 1.

4. The question, " What in your judgment threw off the baggage car at the time of the accident ?" was incompetent, as calling for the opinion of a witness upon the very question in issue, and not involving science or mechanics. *New England Glass Co.* v. *Lovell*, 7 Cush. 319.

*T. Wentworth*, for the defendants, cited *Farwell* v. *Boston & Worcester Railroad*, 4 Met. 49; *Hayes* v. *Western Railroad*, 3 Cush. 270; *Albro* v. *Agawam Canal*, 6 Cush. 75; *King* v. *Boston & Worcester Railroad*, 9 Cush. 112; *Gillshannon* v. *Stony Brook Railroad*, 10 Cush. 228; *Ryan* v. *Cumberland Valley Railroad*, 23 Penn. State R. 384; *Coon* v. *Syracuse & Utica Railroad*, 1 Selden, 492; *Russell* v. *Hudson River Railroad*, 17 N. Y. 134; *Carle* v. *Bangor & Piscataquis Canal & Railroad*, 43 Maine, 269; *Noyes* v. *Smith*, 28 Verm. 59; *Tarrant* v. *Webb*, 18 C. B. 797; Redfield on Railways, § 170, and cases cited.

By THE COURT.* If a railroad corporation are bound to use reasonable care, in furnishing a suitable safe engine and car, in favor of a person employed by them, which is to some extent a new question, not yet distinctly adjudicated, of which we give no opinion, the instructions to the jury in this case were sufficiently favorable to the plaintiff.

The question put to the witness so far involved the application of forces as to be properly within the range of testimony of experts. *Judgment on the verdict.*

---

* HOAR, J. did not sit in this case.